UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

IN RE: LAWNMOWER ENGINE ) Case No. 2:08-MD-01999
HORSEPOWER MARKETING AND )
SALES PRACTICES LITIGATION )
) Judge Lynn Adelman
(This document relates to all cases.) )

## OBJECTIONS OF ROSALIE BORGARDTS, PAUL PALMER
## IRVING S. BERGRIN, CORY A. BUYE AND THOMAS BASIE
## TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR

COME NOW, Rosalie Borgardts, Paul Palmer, Irving S. Bergrin, Cory A. Buye,

and Thomas Basie[1] ("Objectors,") Class Members in this action, by and through their

undersigned counsel, and hereby files these Objections to the Proposed Class Action

Settlement, give notice of their counsel's intent to appear at the June 22, 2010, fairness

hearing. In support of their objections, Objectors state as follows:

## I.

## SUMMARY OF OBJECTIONS

For the following reasons, inter alia, the Settlement Agreement is not fair,

reasonable and adequate.

1.      Claims administration process fails to require reliable oversight,

accountability, and reporting about whether the claims process actually delivers what was

promised.

2.      Timeframes and deadlines benefit Defendants and Class Counsel, but not

Class Members; No timeframe for completing administration of the Monetary Relief is

---

[1] Objectors names, addresses, telephone numbers, lawn mower brands, engine brands,
engine model numbers and lawn mower identification numbers appear on the attached
Exhibits A, B, C, D and E.

set, so Class Members cannot know when payment would arrive, but a cutoff date is set for Warranty Relief, so Class Members will know when they cannot receive relief.

3.    Attorney fees of nearly $36,000,000 would be paid before the Effective Date, regardless of when or whether Class Members receive relief.

4    No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

5.    Attorney fees do not depend upon how much relief is actually paid to the Class Members.

6.    The fee calculation is unfair in that the percentage of the benefit is far too high.

7.    The claims process is cumbersome, unreasonable and designed to deprive Class Members of the relief which the Settlement Agreement purports to provide.

8.    $14,000,000 of the requested attorney fees relates to Warranty Relief, which is too difficult to quantify and has not been quantified and therefore cannot support this enormous fee.

9.    Any fee awarded prior to knowing the amount of relief actually paid to Class Members must be limited to lodestar calculation.

10.    Fee request is not reasonable in the absence of documentation, including billing records, which can be evaluated by Class Members and the Court.

11.    Fees must be set at the market rate, not by arbitrarily claiming a flat amount ($14,000,000) plus a percentage (33%).

12.    The Warranty Relief creates conflicts of interest among Class Members.

13.    The *cy pres* funds need to be used to benefit the silent class members.

Case 2:09-cv-00607-LA    Filed 06/04/10    Page 2 of 26    Document 52

## II.

## SUMMARY OF RELIEF

The relief consists of Monetary Relief and Warranty Relief, each delivered with a separate claims process, and Injunctive Relief. Monetary Relief consists of a Settlement Fund of $65,000,000 from which Class Members would receive payments of $35 or $75 after costs and fees are paid. If claims exceed the net fund, payments will be reduced pro rata. If claims are less, the Court will decide what do with the surplus. Although claims must be submitted by August 31, 2010, no mechanism exists to assure claims will be processed promptly and correctly. The Agreement also fails to provide for any public disclosure to the Court or Class Members about when and how claims administration is proceeding. Absent such essential safeguards, there is no way to know or incentive to assure, that Class Members actually receive what is promised.

Warranty Relief requires Class Members to apply for and obtain a certificate, and then bring the certificate to repair shop, all within a year of the Final Approval of the Settlement Agreement. The Agreement fails to require any oversight or reporting; thereby preventing anyone from knowing if the program works at all or is merely ignored. Warranty Relief is available to some Class Members, but not others, even though the cost of Warranty Relief will diminish the Settlement Fund, and thereby reduce the Monetary Relief available to all Class Members. Thus, Warranty Relief creates a conflict of interest among Class Members.

Likewise, the Injunctive Relief requires Defendants to follow certain testing and marketing practices for ten years, but the Agreement fails to require any oversight, reporting or enforcement mechanism.

The claim forms require information which is difficult to obtain, and the claims submission process is too cumbersome -- clearly designed to discourage participation and thereby minimize Defendants' costs for Warranty Relief.

Unused Settlement Fund money, if any, will be disbursed at the Court's choosing, rather than according to suitable *cy pres* relief agreed by the settling parties, thereby imposing an unfair and inappropriate burden upon the Court.

## III.

## SUMMARY OF ATTORNEY FEES PROVISIONS

The Notice provides, at page 7, that Class Counsel will see as much as third ($21,666,666) of the $65,000,000 fund, and additional $14,000,000. Class Counsel can receive their full $35,666,666 fee EVEN BEFORE the Settlement Agreement becomes effective. The enormous fee also is paid before their clients get paid without regard to how or when the claims process is administered, and without regard to how much actually is paid to the Class Members. Further, the percentage is outrageously high -- 54.87% of the Settlement Fund -- and it is linked to the wrong number. The fee in a case of this size should be closer to 20%, and should be linked to the amount actually paid to Class Members (not strangers, though *cy pres*). If the "take rate" (percentage of Class Members who submit valid, timely claims) is near the historically consistent and predictable rate, Class Counsel will reap far more than their clients.

The Settlement Agreement fails to require that some fees be withheld pending Court approval of a report by Class Counsel to the Court concerning distribution of relief. Such a provision is critical because it would acknowledge that a Settlement Administrator has control of implementing the settlement (after the administrator processes claims and

verifies eligibility). Such a monitoring requirement provides for accountability, and recognizes the possibility that minimal amounts of relief will be redeemed.

The $14,000,000 fee related to Warranty Relief is improper because the relief is a type of injunctive -- that is, non-cash -- relief which is too difficult to quantify, cannot be verified under the Settlement Agreement terms, and thus is not supported by amount (if any) of the benefit delivered. The case law is clear that courts must be highly skeptical of fee awards for relief value that is not quantified. As shown below, this approach has been abused with bizarre and unfair consequences.

The attorney fees are tied to the amount of payment extracted from Defendants, without regard to how much of that relief actually reaches Class Members. At the historic rate of claims filing, Class Counsel most likely will receive far more than their clients receive in Monetary Relief and Warranty Relief. Further, the Agreement omits any provision for establishing how much relief actually reaches Class Members -- which would enable comparison of that amount to the amount Class Counsel wishes to receive.

### IV.

### <u>OBJECTIONS</u>

The Proposed Class Action Settlement is inadequate, unfair and unreasonable for the following reasons.

### A.      <u>Claims Process Is Intended to Minimize Relief.</u>

Class Member must obtain and complete and submit onerous claim forms. Defendants providing warranty benefits hope a frustrated Class Member will simply abandon the relief because the process is more confusing and troublesome than it's worth.

Steve Tilghman, a class action settlement administrator who has performed over 175 settlements, testified that the "vast majority of settlements that required filing a notice of claim" resulted in less than 10% of the class members sending in the claims form. *Sylvester, et al. v. Cigna Corp.*, 369 F.Supp.2d 34, 44 (D.Me. 2005). In *Sylvester*, the court said:

> Unfortunately, when this matter first came before the Court for preliminary approval in July, 2004, the Court was not independently aware (nor did any proponent of the settlement bring to the Court's attention) what the parties and the settlement administrator already knew – namely, that the 'claims made' settlements regularly yield response rates of 10% or less.

Id. at 52.

### B. The requested amount of Attorneys fees cannot be approved.

#### 1. Value of settlement must affect amount of fees.

Contingency fees should be payable according to the value of results actually received by Class Members. Regardless of the lodestar, or the amount of work, or the success in concluding complex litigation, or the theoretical gross amount of value, or the number of claims submitted, fees should be paid only according to the value which actually reaches Class Members' pockets. If Class Members cannot obtain significant quantifiable relief, either because the relief is too confusing, or the restrictions and qualifications are too onerous, their lawyers have not provided a valuable service to them. No matter how hard lawyers work, if they do not provide worthwhile relief to the Clients, they should not be paid in regard to those Class Members. If the relief is delivered, but is less than promised, then the fee should decline accordingly.[2] The purpose of the

---

[2] In *In Re: Excess Value Insurance Coverage Litigation*, Case No. M-21-84-(MDL No. 1339)(S.D.N.Y. Nov. 2, 2005), Judge Richard M. Berman chose to wait for the coupon

settlement is to obtain value for the Class Members, as well as for the Defendants and Class Counsel.

Inasmuch as both the Monetary Relief and the Warranty payable to Class Members depends upon approval of valid claims, the proposed Agreement is a "claims-made" settlement.  Certainly, Defendants are offering to pay $65,000,000 into a fund, and are offering extended warranties, but no one can possibly know how many claims will be approved and paid.  So, the amount paid by Defendants is irrelevant to Class Members; the only "settlement fund" for Class Members is the relief which actually is paid to them.

Federal courts generally have followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorneys' fees. They do not simply use the amount made available to the class when calculating a percentage attorneys' fee, but they wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members.  *See e.g.*, *In re Compact Disc Minimum Advertised Price Litig.*, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar). *See also*, *In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement.  But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value.  Therefore, I have determined to delay award of

---

claim process to end so he could determine the actual benefits paid to the class before deciding the amount of attorney's fees to award.

attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

*In re Compact disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp.2d 184 189-190 (D. Me. 2003)(Hornby, D.J.).

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known …

*In re Excess value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at 58*.

The procedure urged by class counsel has been universally rejected by federal courts, and was termed a "fiction" and "pure fantasy: by the Northern District of California. In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. al. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney fees:

> Class counsel contend that the Court must consider the amount Wells Fargo could have paid under the settlement in determining the common fund for the purpose of attorney's fees. They argue that under the Ninth Circuit's decision in *Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026 (9th Cir. 1997), the court must find that since 3.8 million class members could have made a claim for a free tri-meged credit report, the value of the recovery, that is, the common fund, is at least $114 million … Williams does not require this court to adopt the fiction that the settlement is worth $114 million … Williams, in contrast, was a settlement of a securities-fraud class action for $4.5 million in cash … Class counsel's $114 million figure is pure fantasy. Counsel does not offer a shred of evidence that suggests that the parties reasonably believed that Wells Fargo would actually pay anything near that amount, and the Court finds that they did not … To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the claim members about the importance of credit reports and monitoring their credit … Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained.

*Id.* at *20-28. The court in *Yeagley* went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney fees, a figure that was approximately one-third of class counsel's claimed lodestar.[3] *See also Managing Class Action Litigation: A Pocket Guide for Judges*, Federal Judicial Center 2005.

This Court must defer ruling on Class Counsel's attorney fees until all claims are paid, and the amount of relief awarded (Monetary and Warranty) can be calculated, to assure that fees are paid according to relief which actually is received by Class Members, not according to unsubstantiated speculation about how much relief might be received.

### 2.    The Class Must be Protected

A defendant is only concerned with the total amount being paid without regard to how much goes to the class and how much goes to the attorneys. Every dollar paid to attorneys is unavailable to the class, thereby demonstrating a direct and inverse relationship between the amount of relief and the amount of attorney fee. So the Court's fiduciary role is critical. In this instance, wherein no evidence can be submitted about the value actually paid to Class Members until the claims process is complete, the Court should defer ruling on the fees until receiving evidence about the actual benefit received by Class Members.

Dozens of cases have confirmed and identified this fiduciary role. For example:

> Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these proceedings. When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d

---

[3]  Darrell Palmer represented objector Rose A. Munoz in *Yeagley* and argued for a substantial fee reduction at the District Court's fairness hearing.

513, 516 (6th Cir. 1993). This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." *In Re Copley Pharmaceutical, Inc.* 1 F.Supp.2d 1407 (Wyoming 1998). (emphasis added.)

In *Wise v. Popoff,* et al. 835 F. Supp. 977 (E.D. Mich. 1993) the court describes the roles as follows:

> An attorney's role changes once he files a fee petition. No longer a fiduciary for his client, he becomes nothing more complex than another claimant against the fund created for the client's benefit. The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.,* 860 F 2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989). A court should not "rubber stamp" fee applications. *In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F. Supp. 148, 152 (S.D. Ohio 1986).

The fact that the settling defendant may agree with the fee application is irrelevant to the Court's analysis because the defendant has little interest in the portion of the fund that Class Counsel is allowed to retain. This Court, therefore, must act as a fiduciary to the Class, carefully evaluating the basis for the fee amount. The Court should at least determine what the lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested. The Court must examine not only the amount of time expended, but by whom it was expended. That is, was it by a partner, an associate or a contract attorney, and were the rates reasonable for the locale?

A vivid and tragic example of what happens without supervision of a settlement administration appears in *Moody v. Sears, Roebuck and Co,* 2007

NCBC (Case no. 02 CVS 4892, New Hanover County Court North Carolina, *Order and Opinion*, May 7, 2007). In that case, class counsel received a fee of $1,100,000. Their clients, the class members, received only $2,402 in the national settlement. The lawyers received 458 times more than their clients! Attached as Exhibit F hereto is a May 3, 2005 letter from the North Carolina judge who uncovered this travesty to the Chicago judge who implemented it. The letter, which is Appendix B to the Order, explains the sordid details including the observation that, "Under your order, Sears has no obligation to account to you for the results of the settlement administration."

The instant settlement cannot be approved without a mechanism for showing that it is working, has worked, and yielded sufficient benefit to justify whatever fee is awarded.

### 3. Warranty Relief cannot support a fee request.

In-kind compensation -- even when its value can be calculated -- is worth less than cash of the same nominal value because some percentage never will be used, resulting in no cost to the defendant. *See In re Mexico Transfer Litig.*, 267 F. 3d 743, 748 (7th Cir. 2001). Therefore, the Court must carefully scrutinize the fee request associated with the Warranty Relief because it is merely a form of an in-kind payment which provides little value to the class members, yet is being used to generate large attorneys' fees. *See Synfuel Technologies, Inc. v. DHL Express (USA) Inc.*, 463 F. 3d 646, 654 (7th Cir. 2006). Although a warranty is different from the coupon in *In Re Mexico Transfer* or the pre-paid letter in *Synfuel Technolgoies*, it shares similarities with those items. Just like those in-kind payments, a warranty most often expires before it is ever used (thereby

providing no value to the class member), it costs less to the Defendants than any stated cash value, and forces Class Members to continue doing business with the Defendants.

The misleading uncertainty of the value of such non-cash, in-kind "relief" causes courts to reject fee calculations based on such value, if any. In *Staton v. Boeing*, 327 F.3d 938, 973-74 (9th Cir. 2003), the court considered a fee request which exceeded the 25% benchmark set in that circuit for common fund cases. Class counsel had estimated the figure at 28% by adding various kinds of injunctive relief to the common fund. But the court refused to accept the calculation, finding the fee was actually 38% of the common fund. The court found that the true value of the injunctive relief was too speculative to be considered with the settlement fund, and thus must be disregarded. *See also*, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6 n.9; Robert L. Rossi, Attorneys' Fees § 7.9 (2003). At best the value of injunctive relief can be considered as a relevant circumstance in considering fairness of a fee. *See*, *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1049 (9th Cir. 2002). Indeed, commentary related Rule 23(h), Federal Rules of Civil Procedure, suggests that adding the value of injunctive relief to common funds is limited to suits involving civil rights. *See* Advisory Committee Note, Rule 23(h).

Besides bloating the fee unfairly, the $14,000,000 request for fees related to Warranty Relief diminishes the amount of Monetary Relief available for pro rata distribution to Class members. The cost of Warranty Relief comes directly from the Settlement Fund. Therefore, every dollar used to pay for these warranty "benefits" reduces the amount available for the more valuable Monetary Relief available to all Class Members. This "benefit," by its very nature, dilutes and cannibalizes the cash payment.

So, the Court should award attorney fees only according to the value of the amount of Warranty Relief which actually is received by Class Members.

###### C.       Fees must be paid in installments.

Class Counsel must be paid soon for the considerable amount of hard work already done. However Class Counsel should not be paid immediately when work remains to be done. To assure the Class, the Court, and the public that relief is being delivered accurately, completely and on time, fee payments must be staggered. The concept has worked well in many class actions to maintain the integrity of settlement administration.

Judge Fernando Gaitan reacted to a similar suggestion by objectors in *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, MDL 1559 (W.D. Mo. April 20, 2004), *aff'd on other grounds*, 922 F.3d 922 (8th Cir. 2005) ("the *Nextel* case,") when he directed the parties to respond to an objector's argument that fees must be staged, rather than paid in a lump sum. The settling parties responded by amending the proposed agreement to provide 75% upon final approval of the settlement, and 25% upon completion of all post-settlement obligations.

This common-sense concept has applied successfully in many other class actions. In *Richard Duhaime v. John Hancock Mutual Life Insurance Company, et al.*, 177 F.R.D. 54 (D.Mass 1997), the federal court withheld 40% of the contemplated fee for a year so the court could review the quality of representation provided by Lead Counsel and the results achieved for the class. Similarly, in *Ace Seat Cover Co., Inc., et al. v. The Pacific Life Insurance Company*, Case No. 97-CI-00648 (Kenton Cir. Ct. Ky., Nov. 19, 1998), the court ordered 20% of the fees withheld until completion of the settlement agreement.

In *In re: Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd* re class certification and settlement but *vacated and remanded* re attorneys fees, 148 F.3d 283 (3rd Cir. 1998), the court ultimately ordered that 50% of the attorney's fees be withheld. In *In Re: PNC Financial Services Group, Inc. Securities Litigation*, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D. filed April 17, 2007), Judge Cercone ordered part of the class counsel's fee withheld at interest pending entry of an order of distribution, as had been suggested by an objector in that case.

At least 20% of the fee should be withheld pending completion of the claims-submission process. Then Class Counsel can report to the Court on the amount of relief actually paid to Class Members. Another 20% should be withheld pending distribution of all relief -- including the *cy pres* relief. By staggering the fees, Class Counsel can be paid for work that has been done. But Class Counsel cannot get the full benefit of the Settlement until their clients, the Class Members, get the full benefit of the Settlement. Basic, prudent business practices dictate that people should not be paid fully until the job is done completely.

**D.      Documentation supporting fee request must be fully disclosed in time to challenge it.**

The Notice says Class Counsel will seek fees of as much as one-third (plus interest) of the $65,000,000 Settlement Fund, which would be $21,666,666.67 as compensation for the Monetary Relief, and will seek another $14,000,000 for the value of the Warranty Relief. This potential $35,666,666.67 fees will be paid directly from Settlement Fund, depleting it by 54.87%.

Prior to the objections deadline, Class Members have no information regarding the amount of fees to be sought, or what evidence could support such a fee. Class

Members know only that Class Counsel has bargained for an agreement which would potentially allow them to consume 54.87% of the funds before they ever reach the hands of their intended beneficiaries. Nearly $36,000,000, or anything near that figure, is unjust to the class and offends any sense of a fiduciary duty owed by the attorneys to the Class members.

Although the Settlement Agreement says fees must be considered separately from the settlement terms, that provision is naive at best and misleading at worst; Defendants care only about how much they pay, without regard to who receives payment. Thus, the fairness of a settlement cannot be considered without considering the fairness of the attorney fee. And the fairness of the attorney fee cannot be considered until all Class Members have a chance to examine the fee request for fairness. And Class Members cannot examine the fee request until the supporting documentation is made available. Therefore, the Settlement Agreement cannot be approved until Class Members are able to make a thorough evaluation of the documentation supporting a fee request.

### E. **Attorneys fees must be set at market rate.**

The Seventh Circuit repeatedly has held that, when deciding appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), citing *In Re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001). *See also Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); Montgomery *v. Aetna Plywood, Inc.* 231 F.3d 399, 409 (7th Cir. 2000); Gaskill *v. Gordon*, 160 F.3d 361 (7th Cir. 1998). "The district court must estimate the terms of the contract that private plaintiffs would

have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid* at 718. To determine the market rate of legal services, the court should consider the risk of nonpayment a firm agrees to bear, the quality of its performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *Id*.

In setting the market value of the legal services provided, this court should recognize that the overall size of the settlement and the amount of the fund awarded for attorneys' fees are intimately related and must be viewed together. This relationship is demonstrated in a classic study of class action fee awards that can be downloaded at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=456600#. Here, Professors Eisenberg and Miller performed a comprehensive study of class action fee awards and determined that the mean fee award in common fund cases is well below the widely-quoted one-third figure, constituting 21.9% of the recovery across all cases for a comprehensive data set of published cases.

The study found that a scaling effect exists: fees constitute a lower percent of the client's recovery as the client's recovery increases. Thus, for a case with a $65,000,000 fund, the appropriate fee cannot be 33% (not including the potential $14M fee for warranty benefits), which is too far above the 21.9% mean. This relationship is intuitive because, as the size of the fund increases, a smaller percentage of the fund is required to adequately compensate the attorneys' for the fair market value of their legal services. Simply because more money is at stake does not make the legal issue more difficult or increase the risk of loss. Therefore, the Court cannot allow Class Counsel to claim a fee by blindly comparing percentages of various class action lawsuits from around the

country. Instead, Class Counsel must demonstrate that their requested fee is comparable to what would have been bargained for in an arm's length transaction, taking into consideration the large value of the claims at stake. Several benchmarks can be used to ensure fees are not inflated and arbitrary, including actual agreements on fee contracts, data from large common-pool cases where fees were privately negotiated, and information on class-counsel auctions where judges have entertained bids from different attorneys seeking the right to represent a class. *Synthroid* at 719.

> **F.    Any fee awarded prior to knowing the amount of relief actually paid to the class must be limited to lodestar.**

Until the claims data is known, any fee award must be limited to a lodestar calculation. Based on the very recent -- a few weeks ago -- United States Supreme Court case, *Perdue v. Kenny A. ex rel. Winn*, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010), the Court must be reluctant to award any multiplier unless the Court finds that the hourly rates are inadequate. This recent *Perdue* decision related to a statutory fee award under 42 U.S. Code Section 1988, but has been applied more generally to a class action settlement of the instant type. *See Shannon Van Horn et al. v. Nationwide Property & Casualty Ins. Co., et al.*, Case No. 1:08-605 (N.D. Ohio, 2010), Docket No. 308, p. 10:

> As the Supreme Court has recently cautioned, however, courts should hesitate to employ a multiplier, especially when the factors supporting a multiplier have already been considered in the underlying lodestar calculation. *Perdue v. Kenny A. ex rel. Winn*, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010). Although decided in the context of statutory fee shifting under 42 U.S.C. Section 1988, *Perdue* nevertheless provides persuasive caution that multipliers must be reserved for 'rare' and 'exceptional' circumstances. *Id*. Although this Court does not read *Perdue* to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate.

**G.      The Cy Pres Fund Must Benefit the Silent Class Members**

The 7th Circuit has recognized the use of a Cy Pres fund is appropriate in a class action when it is likely that injured class members will not come forward and make their claim on a fund. *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 346 (7th Cir. 1997). Therefore, it is an appropriate remedy in a case like this where locating or identifying all of the class members would be prohibitively difficult or expensive. *Id.* The great majority of class members will most likely be unable to make any claims against the fund in this settlement because much of the information needed to fill out the form will no longer be in their possession.   This is especially true for class members who purchased older lawn mowers.  The *cy pres* distribution will be their only means of relief so the funds should be put to their next best use for the benefit of the class.  Many Federal Circuits and legal commentators echo this view.  *See eg.* 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions  § 10:17 (4th ed.2009); *In re Pharmaceutical Industry Average Wholesale* Price, 588 F.3d 24, 33-35 (1st Cir. 2009);  Masters *v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423, 436 (2nd Cir. 2007); *In re Ticket Com'n Antitrust Litigation*, 307 F. 3d 679, 282-83 (8th Cir. 2002);  *Democratic Committee of District of Columbia v. Washington Metropolitan Area Transit Commission*, 84 F. 3d 451,  455 (D.C. Cir. 1996); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990);  *Wilson v. Southwest Airlines, Inc.*  880 F.2d 807, 811 (5th Cir. 1989).

Class Counsel should not tax the judiciary system and leave the task of choosing the *cy pres* beneficiary up to the court.  Instead, in accordance with their obligation to represent their client's best interest, they should do their best to make sure the unclaimed funds are distributed for a purpose as near as possible to the legitimate objectives

underlying the lawsuit and the interests of class members. This fund exists to compensate all of the class members, whether they make a claim or not. Silent class members are just as important for the creation of this fund and have given up their rights against these companies in order to make this settlement available. Therefore, to compensate the class members for the harm suffered, any unclaimed funds must go to the benefit of the class.

This Objector proposes that an appropriate *cy pres* distribution plan would be one that distributed the funds to organizations working protect consumers from unfair and misleading marketing practices. Organizations such as the Better Business Bureau, Center for Science in the Public Interest, and Consumer Action are all examples of these organizations. For example, the Better Business Bureau's mission statement is:

> BBB's mission is to be the leader in advancing marketplace trust. BBB accomplishes this mission by creating a community of trustworthy businesses, setting standards for marketplace trust, encouraging and supporting best practices, celebrating marketplace role models, and denouncing substandard marketplace behavior.

http://www.bbb.org/us/BBB-Mission/. Providing funds to organizations such as these who rely on donations to function would greatly benefit the silent class members and would further the purpose of the underlying cause of action in this lawsuit. Class Counsel is intimately familiar with the actions giving rise to this lawsuit and should be encouraged to either endorse the nominations made above or provide supplemental proposals for other or additional *cy pres* beneficiaries to make sure the funds are put to their clients' best use. At the very least we would encourage the Court to set a future hearing date after all claims are paid and a final accounting reveals whether there are

funds available for *cy* pres distribution, in order to designate the *cy pres* recipients and create a record confirming why each recipient has been chosen.

### H.    Oversight Will Assure Relief is Delivered by Claims Administrator.

For the reasons described in the cases above, and to demonstrate the integrity of the Settlement administration, fees paid to the Claims Administrator must be staggered to show the Class, the Court and the public that the Agreement is being administered promptly, correctly and completely. A classic and poignant example of the need for oversight appeared in *Vaughn v. American Honda Motor Co., Inc*., Case No. 0-04CV-421 (U.S.D.C. E.D. Tex. Marshall Division.)  Shortly before the fairness hearing, the administrator suddenly disclosed an error, having failed to give notice to 500,000 of the 6,000,000 class members.   On May 2, 2007, the court ordered the fairness hearing to be postponed from May 30, 2007 to August 21, 2007 to allow notice to be sent, and to renew the deadlines for opting out or filing objections.  Obviously, if the error had occurred after a settlement were approved, then the court, the class members, the public, and maybe even the class counsel, might never had known.  The result would be that the settlement would fail without a fundamental mechanism for accountability.

In the instant case, the Court must maintain jurisdiction, and at least minimal oversight, to assure that the Settlement is implemented as promised.  When the final report is delivered, the Court can order payment of the last attorney fee payment and can make the Defendants' release final.

### I.    Monitoring and Reporting are Essential.

To have any credibility, the Settlement must require reports to establish that it is performing as promised.  The reports must be delivered to the Court so they are available

to the public, including Class Members. Progress and results must be a condition of awarding benefits to the Defendant (the Release) and Class Counsel (attorney fees) because a Settlement that benefits only Defendant and Class Counsel, but not Class members, is not fair, reasonable or adequate. The reports need not be elaborate, but must show what efforts and results have occurred in distributing relief.

In the *Nextel* case, Judge Gaitan directed the parties to address the objectors' concerns about administration oversight and reporting. The parties submitted a joint response to the court's order, agreeing to modify their settlement agreement to resolve those issues. For instance, their settlement agreement was changed to provide:

> Further, Class Counsel shall file a report with the Court setting forth the results of the discovery regarding Defendants' provision of benefits to class members, together with supporting information showing its compliance with the Settlement Agreement, within fifteen (15) days following the completion of discovery. Once the Court is satisfied with Defendants' and Class Counsel's performance under the Settlement Agreement, the Court shall authorize and direct Defendants to pay the final twenty-five percent (25%) of the attorneys' fees due Class Counsel as set forth in Paragraph 13.

Upon approving the modified settlement, Judge Gaitan awarded attorneys fees to Class Counsel.[4]

### J.   Deadlines Must Benefit Class, not Just Defendants and Counsel.

The Settlement unfairly favors Defendant and Class Counsel, at the expense of Class Members, as demonstrated by the schedule specified in the Settlement Agreement. For instance, Monetary Relief claims must be submitted by August 31, 2010, or relief is

---

[4]  In the <u>Nextel</u> case, Judge Gaitan awarded to class counsel $2,500,000 (which is 1.2% of the class recovery) in response to a request for $3,500,000 (1.7% of the class recovery.) The remaining $1,000,000 was awarded to objectors who made contributions to improving the settlement.

forfeited.  The deadline benefits prospective *cy pres* beneficiaries, but not the Class Members.  Consider, also that Class Counsel would be paid long before any Class Member receives relief.

Conspicuously absent are the deadlines which would favor or benefit Class Members.  For instance, there is no deadline for processing claims.  The Administrator could spend weeks, months, or year, or ignore the claims entirely, and no one would know the difference.  The fully paid Class Counsel will have no financial incentive to oversee how promptly the Administrator performs, or to report the progress to the Court. With no deadlines, and no incentives, the Class Members -- who allegedly were victimized by Defendants -- would be victimized again.  No Settlement which leaves such a gaping and critical hole in the administrative process can be considered reasonable or adequate.

**K.    Adoption of All Other Objections**

These Objectors adopt all bona fide objections filed by other Class Members in this case and incorporate them by reference as if they appeared in full herein.

**V.**

**OBJECTORS' VALUE TO CLASS-ACTION PROCESS.**

Generally speaking, class counsel and defense counsel, in their zeal to win approval of an agreement in a class action, often overlook or deny the importance of objectors to the class-action process.  Indeed, in some cases, the class counsel and defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet.[5]  However, settlements, such as this one, can be so complicated that only lawyers who have evaluated and participated in many class action lawsuits can

---

[5]  Such *ad hominem* attacks can be presumed to arise only in the absence of legitimate, persuasive and substantial responses to the merits of the objections.

provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement. Objectors can assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief ever is received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." *Id*. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." *Id.* at 412-13. "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." *Id.* at 413.

"The law generally does not allow good Samaritans to claim a legally enforceable reward for their deeds." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, C.J.). "But when professionals render valuable albeit not bargained-for

services in circumstances in which high transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their services." Id. "That is the situation of objectors to a class action settlement." Id.

In other cases, objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. *See, e.g., Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261, 1285 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th Cir. 1996*); In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 257, 359-60 (N.D.Ga. 1993). Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2nd Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp*., 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359. In *In Re: PNC Financial Services Group, Inc. Securities Litigation*, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D.), wherein, Judge Cercone made a specific finding "in recognition of the benefit to the Class created by the objection and the time spent thereon by objector's Counsel . . ." and thereby awarded compensation to objector's counsel.

Accordingly, Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the proposed Settlement Agreement, identifying problems with the proposed Settlement Agreement, and presenting substantial and workable solutions.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate. Accordingly, an incentive award is appropriate for Objector herein for her willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## VI.

### <u>CONCLUSION</u>

These Objectors hereby adopt, subscribe to and incorporate into these Objections all other well-taken, timely filed objections. Objectors also request an incentive award as a representative of Class Members in this litigation.

WHEREFORE, Objectors respectfully request that this Court:

      A.     Upon proper hearing, sustain these Objections;

      B.     Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

      C.     Award an incentive fees to Objectors for their service as a named representatives of Class Members in this litigation.

Dated: June 4, 2010                   Respectfully submitted,


                                      /s/ Patrick Sweeney_____
                                      Patrick Sweeney (WI Bar No. 1020435)
                                      Sweeney & Sweeney, S.C.
                                      440 Science Drive, Suite 101
                                      Madison, WI 53711
                                      Telephone: (608) 238-4444
                                      Facsimile: (608) 238-8262
                                      patrick@sweenlaw.com

                                      Darrell Palmer  (CA Bar No. 125147)
                                      Law Offices of Darrell Palmer
                                      603 N. Highway 101, Suite A
                                      Solana Beach, CA 92075
                                      Telephone: (858) 792-5600
                                      Facsimile: (858) 792-5655
                                      darrell.palmer@palmerlegalteam.com

                                      Kenneth E. Nelson (MO Bar No.31993)

Nelson Law Firm, P.C.
1100 Main Street #2900
Kansas City, MO 64105
Telephone: (816) 421-7225
Facsimile: (816) 831-6584
kennelson@mclaw.com

Edward F. Siegel (OH Bar No. 0012912)
27600 Chagrin Blvd. #340
Cleveland, OH 44122
Telephone: (216) 831-3424
Facsimile: (216) 831-6584
efsiegel@efs-law.com

Attorneys for Objectors Rosalie Borgardts,
Paul Palmer, Irving S. Bergrin, Cory A.
Buye, and Thomas Basie

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed.  Notice

of this filing was sent to the following via the Court's electronic filing system and U.S.

Mail on this the 4th day of June 2010.

Vincent J. Esades
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
vesades@heinsmills.com

/s/ Patrick Sweeney_____